## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

_____

BRANDON TOWNSEND,

                              Plaintiff,              CIVIL ACTION NO.  _____

                                                      **JURY TRIAL DEMANDED**

v.

EXPERIAN INFORMATION SOLUTIONS,
INC.,
Through Registered Agent
C T Corporation System
1999 Bryan St., Ste. 900
Dallas, Texas  75201-3136

And

EQUIFAX    INFORMATION    SERVICES,
LLC,
Through Registered Agent
Corporation Service Company
100 Shockoe Slip Fl 2
Richmond, Virginia  23219-4100

And

TRANS UNION, LLC,
Through Registered Agent
Corporation Service Company
100 Shockoe Slip Fl 2
Richmond, Virginia  23219-4100

And

_____

ONEMAIN FINANCIAL GROUP, LLC,
Through Registered Agent
C T Corporation System
4701 Cox Rd Ste 285
Glen Allen, Virginia  23060-6808

And

UPSTART NETWORK, INC.,
Through Registered Agent
Corporation Service Company
100 Shockoe Slip Fl 2
Richmond, Virginia  23219-4100

And

FINWISE BANK,
Through Registered Agent
Corporation Service Company
756 E Winchester St.
Murray, Utah  84107

And

OPPORTUNITY FINANCIAL, LLC,
Through Registered Agent
250 Browns Hill Ct.
Midlothian, Virginia  23114-9510

And

JEFFERSON CAPITAL SYSTEMS, LLC.
Through Registered Agent
Corporation Service Company
100 Shockoe Slip Fl 2
Richmond, Virginia  23219-4100

                        Defendants

## COMPLAINT

NOW COMES Plaintiff, Brandon Townsend (hereinafter the "Plaintiff"), by and through their counsel of Record to make their allegations known against the Defendants through their complaint that alleges the following:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §1681 et seq. (Fair Credit Reporting Act) and 15 U.S.C. § 1692 et seq. (Fair Debt Collection Practices Act).

2. The FCRA is a federal statute designed to protect consumers from harm associated with inaccurate information reported in consumer reports.

3. The FCRA imposes on consumer reporting agencies the duty to ensure maximum possible accuracy of information contained in consumer reports.

4. The FCRA provides consumers with a private right of action against consumer reporting agencies who willfully and/or negligently fail to comply with their duties imposed by the FCRA.

5. Defendants have produced and/or sold consumer reports concerning Plaintiff that included highly inaccurate, derogatory, and misleading information that did not belong to Plaintiff.

6. The Defendants reported highly derogatory, inaccurate, and fraudulent information on Plaintiff's credit reports and/or credit files, causing damages to Plaintiff.

7. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff or Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

8. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

3

9.  All violations by the Defendants were knowing, willful, reckless, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

10. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendants named in this Complaint.

## JURISDICTION AND VENUE

11. Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

12. Venue in this District is appropriate under 28 U.S.C. §1391(b) as Plaintiff resides in the Eastern District of Virginia, Defendants conduct regular business in this District, and the communications and events giving rise to this action occurred in this District.

## PARTIES

13. Plaintiff is a natural person residing in Fredericksburg, Virginia, and is a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

14. Defendant Experian Information Solutions, Inc (hereinafter "Experian"), is a Foreign For-Profit Corporation registered to do business in Virginia and with a registered agent in Virginia. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties. Based on information and belief, Experian is reporting consumer credit files on thousands of consumers in the Eastern District of Virginia.

15. Defendant Equifax Information Services, LLC (hereinafter "Equifax"), is a Foreign For-Profit Limited Liability Company registered to do business in Virginia and with a registered agent in Virginia. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and

is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties. Based on information and belief, Equifax is reporting consumer credit files on thousands of consumers in the Eastern District of Virginia.

16. Defendant TransUnion, LLC (hereinafter "TransUnion"), is a Foreign For-Profit Limited Liability Company registered to do business in Virginia and with a registered agent in Virginia. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties. Based on information and belief, TransUnion is reporting consumer credit files on thousands of consumers in the Eastern District of Virginia.

17. Defendant OneMain Financial Group, LLC (hereinafter "OneMain"), is a Foreign For-Profit Limited Liability Company registered to do business in Virginia. Defendant is a "furnisher" of information, as defined by 15 U.S.C. §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to Credit Reporting Agencies about consumer transactions. Defendant is actively conducting business in the Eastern District of Virginia.

18. Defendant Upstart Network, Inc. (hereinafter "Upstart"), is a Foreign For-Profit Corporation registered to do business in Virginia. Defendant is a "furnisher" of information, as defined by 15 U.S.C. §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to Credit Reporting Agencies about consumer transactions. Defendant is actively conducting business in the Eastern District of Virginia.

19. Defendant FinWise Bank (hereinafter "FinWise") is a Foreign For-Profit company. Defendant is a "furnisher" of information, as defined by 15 U.S.C. §1681s(a)&(b), who regularly

and in the ordinary course of business furnishes credit information to Credit Reporting Agencies about consumer transactions.

20. Defendant Opportunity Financial, LLC (hereinafter "OppLoans"), is a Foreign For-Profit Limited Liability Company registered to do business in Virginia. Defendant is a "furnisher" of information, as defined by 15 U.S.C. §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to Credit Reporting Agencies about consumer transactions. Defendant is actively conducting business in the Eastern District of Virginia.

21. Defendant Jefferson Capital Systems, LLC (hereinafter "Jefferson Capital") is a Foreign For-Profit Limited Liability Company registered to do business in Virginia. Defendant is a "furnisher" of information, as defined by 15 U.S.C. §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to Credit Reporting Agencies about consumer transactions. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) who regularly collects or attempts to collect debts from consumers. Defendant is actively conducting business in the Eastern District of Virginia.

## FACTUAL ALLEGATIONS

22. Plaintiff incorporates by reference all the foregoing paragraphs as though the same were set forth at length herein.

23. Plaintiff is the victim of inaccurate credit reporting.

24. Plaintiff is the victim of identity theft.

25. Plaintiff became the victim of identity theft after, on information and belief, a criminal obtained Plaintiff's personal identifying information (PII) and used it to open and obtain various lines of credit without Plaintiff's knowledge, consent, authorization, or approval.

26. As a result of the identity theft, the following fraudulent accounts and hard inquiries began appearing on Plaintiff's credit reports with Experian, Equifax, and Trans Union (hereinafter collectively "the Credit Reporting Agencies" or "the CRAs"):

    a. <u>Experian:</u>

        i.    UPSTART             Account #L404****

        ii.   UPSTART             Account #FW43****

        iii.  ONEMAIN           Account #2244****

        iv.  OPPLOANS/FINWISE     Account #LAI0****

    b. <u>Equifax:</u>

        i.    UPSTART             Account #****4760

        ii.   UPSTART             Account #******32

        iii.  ONEMAIN           Account #****5941

        iv.  FINWISE/OPPLOANS     Account #****9883

    c. <u>Trans Union:</u>

        i.    UPSTART             Account #L404****

        ii.   UPSTART             Account #FW43****

        iii.  ONEMAIN           Account #2244****

        iv.  FINWISE/OPPLOANS     Account #LAI0****

27. Plaintiff first learned of the identity theft on or around July 2024 when Plaintiff was in the process of buying a home. During the home-buying process, Plaintiff's learned that their credit score was low from their mortgage lender.

28. Plaintiff was shocked, confused, embarrassed, and humiliated to learn that their credit score was low from the mortgage lender, especially because Plaintiff's credit score was in the high 700s and listed as "excellent" prior to the identity theft.

29. As a result of the identity theft, Plaintiff's credit fell over 100 points, causing Plaintiff's score to fall to 610, and disqualifying Plaintiff from being eligible for their home loan.

30. Plaintiff immediately pulled their credit reports and found that four (4) fraudulent loans had been taken out in Plaintiff's name by an unknown criminal without Plaintiff's knowledge, consent, authorization, or approval, causing Plaintiff's credit score to plummet.

31. After learning of the identity theft, Plaintiff disputed the fraudulent and inaccurate accounts with Experian.

32. Shortly thereafter, Plaintiff obtained a police report from their local police station in Fredericksburg, Virginia, as well as an identity theft report from the FTC.

33. On or around mid-July 2024, Plaintiff disputed the fraudulent and inaccurate accounts with Equifax and Trans Union. Plaintiff's July disputes included copies of Plaintiff's police report and FTC identity theft report.

34. On or around early August 2024, Plaintiff received notice from Experian that it had completed its investigation into Plaintiff's dispute and that Experian had verified the fraudulent accounts disputed by Plaintiff as accurate.

35. On October 22, 2024, more than thirty (30) days following the CRAs' receipt of Plaintiff's disputes, Plaintiff pulled their credit reports and found that the following accounts were still being reported on Plaintiff's credit reports:

    a.  <u>Experian:</u>

        i.   UPSTART                                     Account #L404****

     ii.    UPSTART                  Account #FW43****

     iii.    ONEMAIN             Account #2244****

     iv.    OPPLOANS/FINWISE     Account #LAI0****

  b.  <u>Equifax:</u>

     i.    UPSTART                  Account #****4760

     ii.    UPSTART                  Account #******32

     iii.    ONEMAIN             Account #****5941

     iv.    FINWISE/OPPLOANS     Account #****9883

  c.  <u>Trans Union:</u>

     i.    UPSTART                  Account #L404****

     ii.    UPSTART                  Account #FW43****

     iii.    ONEMAIN             Account #2244****

     iv.    FINWISE/OPPLOANS     Account #LAI0****

36. After each of the CRAs failed to remove the fraudulent and inaccurate accounts disputed by Plaintiff following their investigations into Plaintiff's disputes, Plaintiff re-disputed the fraudulent and inaccurate accounts through dispute packages mailed directly to the CRAs via USPS Certified Mail.

37. Plaintiff's dispute packages each contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's FTC report, a copy of Plaintiff's police report, a copy of Plaintiff's driver's license, and a copy of Plaintiff's utility bill showing their current address for identity verification.

38. Plaintiff's Experian dispute package was delivered and signed for by an Experian agent or employee on November 19, 2024.

39. Plaintiff's Equifax dispute package was delivered and signed for by an Equifax agent or employee on November 21, 2024.

40. On December 10, 2024, more than four (4) business days after its receipt of Plaintiff's dispute package, Plaintiff viewed their Experian credit report and found that the fraudulent and inaccurate accounts disputed by Plaintiff were still being reported by Experian.

41. On December 10, 2024, more than four (4) business days after its receipt of Plaintiff's dispute package, Plaintiff viewed their Equifax credit report and found that the fraudulent and inaccurate accounts disputed by Plaintiff were still being reported by Equifax.

42. On December 31, 2024, more than thirty (30) days following its receipt of Plaintiff's dispute package, Plaintiff viewed their Experian credit report and found that the fraudulent and inaccurate accounts disputed by plaintiff were still being reported by Experian.

43. At this time, Plaintiff observed that there was no dispute notation indicating that Experian had processed Plaintiff's November 2024 dispute.

44. Plaintiff received no notice from Experian stating that it would not process Plaintiff's dispute.

45. On information and belief, not only did Experian fail to conduct a reasonable, good faith investigation into Plaintiff's dispute, but it failed to conduct any dispute into Plaintiff's dispute all together.

46. On information and belief, Plaintiff's Experian dispute package was lost, destroyed, set aside, or otherwise done away with upon receipt by Experian.

47. On information and belief, Plaintiff's Experian acted intentionally, willfully, and recklessly in its refusal to process Plaintiff's dispute.

48. On December 31, 2024, more than thirty (30) days following its receipt of Plaintiff's dispute package, Plaintiff viewed their Equifax credit report and found that the fraudulent and inaccurate accounts disputed by Plaintiff were still being reported by Equifax.

49. Plaintiff's Trans Union dispute package was delivered and signed for by a Trans Union agent or employee on January 14, 2025.

50. Following its receipt of Plaintiff's dispute package, Plaintiff received dispute results from Trans Union indicating that the fraudulent and inaccurate accounts disputed by Plaintiff had been verified as accurate by Trans Union during its processing of Plaintiff's dispute.

51. The following accounts continued reporting for more than four (4) business days following the CRAs' receipt of Plaintiff's dispute packages:

    a. <u>Experian:</u>

        i.   UPSTART                              Account #L404****

        ii.   UPSTART                              Account #FW43****

        iii.   ONEMAIN                             Account #2244****

        iv.   OPPLOANS/FINWISE            Account #LAI0****

    b. <u>Equifax:</u>

        i.   UPSTART                              Account #*T***4760

        ii.   UPSTART                              Account #******32

        iii.   ONEMAIN                             Account #****5941

        iv.   FINWISE/OPPLOANS            Account #****9883

    c. <u>Trans Union:</u>

        i.   UPSTART                              Account #L404****

        ii.   UPSTART                              Account #FW43****

11

|      | iii. | ONEMAIN           | Account #2244**** |
|      | iv.  | FINWISE/OPPLOANS  | Account #LAI0**** |

52. The following accounts continued reporting for more than thirty (30) days following the CRAs' receipt of Plaintiff's dispute packages:

a. <u>Experian:</u>

|     | i.   | UPSTART           | Account #L404**** |
|     | ii.  | UPSTART           | Account #FW43**** |
|     | iii. | ONEMAIN           | Account #2244**** |
|     | iv.  | OPPLOANS/FINWISE  | Account #LAI0**** |

b. <u>Equifax:</u>

|     | i.   | UPSTART           | Account #*T***4760 |
|     | ii.  | UPSTART           | Account #******32  |
|     | iii. | ONEMAIN           | Account #****5941  |
|     | iv.  | FINWISE/OPPLOANS  | Account #****9883  |

c. <u>Trans Union:</u>

|     | i.   | UPSTART           | Account #L404**** |
|     | ii.  | UPSTART           | Account #FW43**** |
|     | iii. | ONEMAIN           | Account #2244**** |
|     | iv.  | FINWISE/OPPLOANS  | Account #LAI0**** |

53. On or around March 2025, Plaintiff received a notification stating that a collection account had been added to their credit reports. After pulling their credit reports, Plaintiff found that highly negative and derogatory Jefferson Capital Account #****7602 had begun appearing on Plaintiff's credit reports as a result of the identity theft.

54. Once again, Plaintiff mailed disputed packages directly to the CRAs via USPS certified mail. Plaintiff's second dispute packages each contained a detailed and thorough dispute letter signed by Plaintiff that now included information related to the fraudulent Jefferson Capital account, a copy of Plaintiff's police report, a copy of Plaintiff's FTC report, a copy of Plaintiff's driver's license, and a copy of Plaintiff's utility bill showing Plaintiff's current address for identity verification.

55. Plaintiff's second Experian dispute package was delivered and signed for by an Experian agent or employee on April 1, 2025.

56. Plaintiff's second Equifax dispute package was delivered and signed for by an Equifax agent or employee on April 2, 2025.

57. On April 9, 2025, more than four (4) business days following its receipt of Plaintiff's dispute package, Plaintiff accessed their Experian credit report and found that the highly derogatory, negative, fraudulent, and inaccurate Jefferson Capital account was still being reported by Experian.

58. On April 9, 2025, more than four (4) business days following its receipt of Plaintiff's dispute package, Plaintiff accessed their Equifax credit report and found that the highly derogatory, negative, fraudulent, and inaccurate Jefferson Capital account was still being reported by Equifax.

59. Both Experian and Equifax continued their inaccurate reporting of the fraudulent and inaccurate Jefferson Capital account for more than four (4) business days after receipt of Plaintiff's dispute package containing Plaintiff's detailed and thorough dispute letter, police report, FTC identity theft report, and proof of identity, in violation of the FCRA.

60. As a result of Defendants' conduct, Plaintiff has suffered extensive damages, described in detail below.

## PLAINTIFF'S DAMAGES

61. As a result of Defendants' violations of the FCRA, Plaintiff is entitled to actual, statutory, and punitive damages, along with their attorneys' fees and costs in this matter. Defendants' conduct was such that Defendants acted willfully, intentionally, recklessly, and/or negligently in their actions related to Plaintiff.

62. The conduct of the Defendants was a direct and/or proximate cause, as well as a substantial factor in bringing about injuries, damages, and harm suffered by Plaintiff. Plaintiff continues to suffer as a result of Defendants' conduct. Plaintiff expects their damages to continue to accrue and be ongoing until they are made whole again if that ever occurs.

63. Defendants, due to their conduct, are liable to compensate Plaintiff for the full amount of actual, statutory, compensatory, and punitive damages, as well as such other relief permitted by law. Plaintiff has suffered the following types of damages due to the conduct of Defendants:

 a. Emotional damages in the form of mental anguish, humiliation, and embarrassment. Plaintiff has suffered immense emotional distress and mental anguish as a result of Defendants' conduct. Plaintiff has suffered from extreme and debilitating stress and anxiety due to constantly worrying about their credit situation and how the identity theft may impact their employment and future opportunities. Plaintiff's mental anguish has been so severe that Plaintiff has struggled with feelings of depression and hopelessness, both of which have affected Plaintiff's marriage and day-to-day life, as Plaintiff often cries and feels like a burden to their family members. Plaintiff's mental anguish is such

that every aspect of Plaintiff's life has been affected by Defendants' conduct. Plaintiff feels humiliated and embarrassed due to no longer being able to qualify for home loans through no fault of their own and feels incredibly burdened and overwhelmed by a financial burden for which Plaintiff is not legally responsible.

      b.    Physical manifestations of mental anguish, humiliation, and embarrassment. Plaintiff's emotional damages have manifested in various physical symptoms, including frequent and recurring loss of sleep due to the constant state of worry Plaintiff has experienced since they learned of the identity theft. Oftentimes Plaintiff is unable to fall asleep or stay asleep due to racing heartbeat as a result of their constant stress. Plaintiff has also suffered from frequent and recurring severe headaches, and hair and weight loss as a result of Defendants' conduct.

      c.    Financial and credit-related damages, including damages to Plaintiff's creditworthiness, credit reputation, and borrowing power.

64. Plaintiff's damages caused by and through the conduct of Defendants are more generally described as follows:

      a.    Emotional damages in the form of mental anguish, humiliation, embarrassment, depression, and anxiety.

      b.    Physical manifestations of stress and anxiety, including loss of sleep, racing heartbeat, headaches, and hair and weight loss.

      c.    Financial damages, including damage to Plaintiff's creditworthiness, credit reputation, and borrowing power.

        d.      All other damages as described above.

65. Plaintiff's damages attributable to Defendants are serious, continuing, and ongoing.

66. Defendants' actions have led to Plaintiff's great detriment and loss and are caused by the conduct of Defendants described herein.

## CAUSES OF ACTION

67. Plaintiff incorporates by reference the foregoing paragraphs as though the same were set forth at length herein.

68. This suit is based upon the Defendants' violations of the Fair Credit Reporting Act (FCRA). All causes of action were the producing causes of damages which Plaintiff has suffered.

## VIOLATIONS OF THE FAIR CREDIT REPORTNG ACT (FCRA)

69. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

70. The FCRA defines a "Consumer Reporting Agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

71. Defendants Experian, Equifax, and Trans Union are Consumer Reporting Agencies pursuant to the FCRA and will collectively be referred to as "the CRAs," or "the CRA Defendants."

72. The FCRA defines a "Person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

73. The Code of Federal Regulations defines a "Furnisher" as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 CFR § 1022.41(c).

74. Defendants OneMain, Upstart, FinWise Bank, OppLoans, and Jefferson Capital are "Persons" pursuant to the FCRA, and "Furnishers" pursuant to the Code of Federal Regulations (CFR) and will collectively be referred to as "the Data Furnishers" or "the Data Furnisher Defendants."

75. The following conduct of the CRAs and the Data Furnishers was a direct and/or proximate cause, as well as a substantial factor in, and/or producing cause bringing about the serious injuries, damages, and harm that Plaintiff has suffered and continues to suffer as of the filing of this Complaint. Plaintiff expects their damages caused by the CRAs and the Data Furnishers to continue to accrue and be ongoing until Plaintiff is made whole again.

76. The CRAs and the Data Furnishers, as defined above, acted in a manner that was willful, intentional, reckless, and/or negligent in their actions related to Plaintiff. As a result of these Defendants' violations of the FCRA, which are listed below, Plaintiff is entitled to actual, statutory, and punitive damages along with their attorneys' fees and costs in this matter.

77. Plaintiff's damages attributable to the CRAs and the Data Furnishers are described in detail in paragraphs 61-66 above.

78. Plaintiff's damages attributable to the CRAs and the Data Furnishers are serious, continuing, and ongoing.

79. This suit is brought against the Defendants for violations of the FCRA which are the causes of Plaintiff's damages. In all instances of violating the FCRA, Defendants did so willfully, intentionally, recklessly, and/or negligently. Plaintiff is entitled to recover actual damages, punitive damages, and reasonable attorneys' fees under 15 U.S.C. §1681n and §1681o.

## COUNT I:

### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (Defendants Experian, Equifax, and Trans Union)

80. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

81. The FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

82. The CRAs maintained fraudulent and inaccurate information about Plaintiff and prepared credit reports regarding Plaintiff containing fraudulent information.

83. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the CRAs readily stored, prepared, reported, and/or sold reports containing fraudulent and inaccurate information about Plaintiff, and in doing so, the CRAs suggested that Plaintiff was responsible for accounts and information that was the product of identity theft.

84. The CRAs' conduct as to Plaintiff was such that a third party who viewed Plaintiff's credit reports could reasonably infer that the fraudulent and inaccurate information being reported by the CRAs was accurate, to Plaintiff's great detriment.

18

85. The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to establish and follow reasonable procedures to assure maximum possible accuracy in the preparation of credit files and/or reports they maintained and published about Plaintiff.

86. Had the CRAs established and/or followed reasonable procedures to assure maximum possible accuracy of their credit files and/or reports concerning Plaintiff, the CRAs would have known that the information being reported about Plaintiff was fraudulent and inaccurate.

87. Plaintiff disputed the fraudulent and inaccurate accounts through dispute packages mailed directly to the CRAs via USPS certified mail. In these dispute packages, Plaintiff expressly informed the CRAs that Plaintiff was the victim of identity theft and that the disputed account information did not belong to Plaintiff. Plaintiff instructed the CRAs not to rely on the Data Furnishers for accurate information about their credit and to conduct an independent investigation into Plaintiff's dispute.

88. Had the CRAs established and/or followed reasonable procedures to assure maximum possible accuracy of their credit files and/or reports concerning Plaintiff, the CRAs would have deleted and/or blocked the reporting of the fraudulent and inaccurate information after being put on notice of the identity theft from Plaintiff's dispute package.

## COUNT II:

### 15 U.S.C. § 1681i(a)(1)(A)
### Failure to Conduct a Reasonable Investigation into Plaintiff's Dispute
### (Defendants Experian, Equifax, and Trans Union)

89. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

90. The FCRA provides:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and

the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file.... before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

91. Plaintiff disputed the fraudulent and inaccurate accounts multiple times online and through multiple rounds of dispute packages mailed directly to the CRAs via USPS certified mail.

92. Plaintiff's dispute packages each contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's police report, a copy of Plaintiff's FTC report, a copy of Plaintiff's driver's license, and a copy of Plaintiff's utility bill for identity verification.

93. Plaintiff's dispute packages contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and inaccurate accounts had been placed on Plaintiff's credit reports as a result of identity theft.

94. After Plaintiff verified that their dispute packages had been delivered to the CRAs by USPS, Plaintiff waited more than thirty (30) days before viewing their credit reports following their dispute.

95. After pulling new credit reports, Plaintiff found that the disputed accounts remained on their credit report following the CRAs' processing of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i(a)(1)(A).

96. Plaintiff provided the CRAs with ample information proving that the disputed accounts were the product of identity theft. Had the CRAs conducted reasonable investigations in accordance with the requirements imposed by the FCRA, they would have deleted the disputed items from Plaintiff's credit file before the end of the thirty (30) day period.

20

## COUNT III:

### 15 U.S.C. § 1681i(a)(4)
### Failure to Read and Consider Documents Attached to Plaintiff's Dispute
### (Defendants Experian, Equifax, and Trans Union)

97. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

98. The FCRA provides that "[i]n conducting any reinvestigation under [15 U.S.C. § 1681i(a)(1)], with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the [30-day] period described in [15 U.S.C. § 1681i(a)(1)(A)] with respect to such disputed information." 15 U.S.C. § 1681i(a)(4).

99. Plaintiff disputed the fraudulent and inaccurate accounts multiple times online and through multiple rounds of dispute packages mailed directly to the CRAs via USPS certified mail.

100. Plaintiff's dispute packages each contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's police report, a copy of Plaintiff's FTC report, a copy of Plaintiff's driver's license, and a copy of Plaintiff's utility bill for identity verification.

101. Plaintiff's dispute packages contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and inaccurate accounts had been placed on Plaintiff's credit reports as a result of identity theft.

102. Plaintiff's dispute packages each contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and inaccurate accounts had been placed on Plaintiff's credit reports as a result of identity theft.

103.    Plaintiff, through their dispute package, provided the CRAs with documents sufficient to prove that Plaintiff was the victim of identity theft, however, the CRAs failed to review and consider all relevant documents submitted by Plaintiff, in violation of 15 U.S.C. § 1681i(a)(4).

104.    Had the CRAs acted in accordance with the investigation requirements imposed by the FCRA and reviewed and considered each document contained in Plaintiff's dispute packages, it would have been easy for the CRAs to determine that Plaintiff was the victim of identity theft and delete and/or suppress the disputed information accordingly.

## COUNT IV:

### 15 U.S.C. § 1681i(a)(5)(A)
### Failure to Delete and/or Modify the Disputed Information
### (Defendants Experian, Equifax, and Trans Union)

105.    Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

106.    The FCRA provides that:

(5) Treatment of Inaccurate or Unverifiable Information

(A) *In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-

(i)    promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

(ii)   promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

15 U.S.C. §1681i(a)(5)(A).

22

107.    Plaintiff disputed the fraudulent and inaccurate accounts multiple times online and through multiple rounds of dispute packages mailed directly to the CRAs via USPS certified mail.

108.    Plaintiff's dispute packages each contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's police report, a copy of Plaintiff's FTC report, a copy of Plaintiff's driver's license, and a copy of Plaintiff's utility bill for identity verification.

109.    Plaintiff's dispute packages contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and inaccurate accounts had been placed on Plaintiff's credit reports as a result of identity theft.

110.    Plaintiff's dispute packages each contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and inaccurate accounts had been placed on Plaintiff's credit reports as a result of identity theft, yet the CRAs failed to delete fraudulent and inaccurate information disputed by Plaintiff.

111.    After pulling new credit reports following their dispute, Plaintiff found that the CRAs continued reporting the fraudulent and inaccurate accounts disputed by Plaintiff, in violation of the FCRA.

112.    The CRAs violated their duties under 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed information from Plaintiff's credit files and/or credit reports.

113.    Had the CRAs conducted reasonable investigations into Plaintiff's disputes as required by statute, they would have easily found that Plaintiff was the victim of identity theft and promptly deleted the disputed items from Plaintiff's credit files and/or credit reports in accordance with the FCRA. Instead, the CRAs continued their inaccurate credit reporting about Plaintiff, to Plaintiff's great detriment.

## COUNT V:

**15 U.S.C. § 1681c-2(a)**
**Failure to Block the Reporting of Identity Theft Information within Four (4) Business Days**
**(Defendants Experian, Equifax, and Trans Union)**

114.    Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

115.    The FCRA provides the following:

[A] consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identities as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of—

(1) appropriate proof of identity of the consumer;

(2) a copy of an identity theft report;

(3) the identification of such information by the consumer; and

(4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).

116.    After Plaintiff discovered the fraudulent and inaccurate accounts appearing on their credit reports, Plaintiff disputed the accounts through dispute packages mailed directly to the CRAs via USPS certified mail.

117.    Plaintiff disputed the fraudulent and inaccurate accounts multiple times online and through multiple rounds of dispute packages mailed directly to the CRAs via USPS certified mail.

118.     Plaintiff's dispute packages each contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's police report, a copy of Plaintiff's FTC report, a copy of Plaintiff's driver's license, and a copy of Plaintiff's utility bill for identity verification.

119.     Plaintiff's dispute packages contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and inaccurate accounts had been placed on Plaintiff's credit reports as a result of identity theft.

120.     After pulling new credit reports more than four (4) business days following the delivery of Plaintiff's dispute packages, Plaintiff found that the CRAs had continued reporting the fraudulent and inaccurate accounts on Plaintiff's credit reports in violation of the FCRA.

121.     The CRAs violated 15 U.S.C. § 1681c-2(a) when, based on information and belief, they failed to block the reporting of information in Plaintiff's consumer file that Plaintiff identified as having resulted from an alleged identity theft within four (4) days of receipt of proof of identity, a copy of Plaintiff's identity theft report, identification of identity theft-related information, and Plaintiff's statement that the fraudulent and inaccurate accounts were the product of identity theft.

122.     Had the CRAs acted in accordance with their duties under the FCRA, the CRAs would have blocked the reporting of the fraudulent and inaccurate accounts identified by Plaintiff as resulting from identity theft within four (4) days of receipt of Plaintiff's dispute packages.

## COUNT VI:

### 15 U.S.C. § 1681s-2(b)
### Failure to Conduct a Reasonable Investigation of the Information Disputed by Plaintiff
### (Defendants OneMain, Upstart, FinWise, OppLoans, and Jefferson Capital)

123.     Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

124.     The FCRA provides the following:

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –

(A)    Conduct an investigation with respect to the disputed information;

(B)    Review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C)    Report the results of the investigation to the consumer reporting agency;

(D)    If the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E)    If an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i)    Modify that item of information;
(ii)   Deleted that item of information; or
(iii)  Permanently block the reporting of that information.

15 U.S.C. § 1681s-2(b).

125.     The Data Furnishers furnished information about fraudulent and inaccurate accounts that were the product of identity theft to the Credit Reporting Agencies.

126.     The Data Furnishers caused fraudulent and inaccurate accounts to be added to Plaintiff's credit files with the Credit Reporting Agencies.

127.     On information and belief, notice of Plaintiff's disputes and attachments were transmitted to the Data Furnishers by the CRAs during the dispute process. Therefore, the Data Furnishers were aware that the disputed accounts did not belong to Plaintiff and still verified the

disputed accounts as accurate and instructed the CRAs to continue reporting the inaccurate information, to the great detriment of Plaintiff.

128.    The Data Furnishers failed to conduct reasonable, good faith investigations into Plaintiff's notices of dispute.

129.    Had the Data Furnishers acted in accordance with their duties under 15 U.S.C. § 1681s-2(b), the Data Furnishers would have recognized that the disputed accounts were the product of identity theft and instructed the CRAs to cease their reporting of the fraudulent and inaccurate accounts. Instead, the Data Furnishers verified disputed accounts as accurate and instructed the CRAs to continue their reporting of the fraudulent and inaccurate accounts.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

130.    Plaintiff incorporates by reference the foregoing paragraphs as though the same were set forth at length herein.

131.    The FDCPA defines "debt collectors" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

132.    Defendant Jefferson Capital (hereinafter "the Debt Collector") is a debt collector as defined by 15 U.S.C. § 1692a(6).

133.    The following conduct of the Debt Collector was a direct and/or proximate cause, as well as a substantial factor in, and/or producing cause bringing about the serious injuries, damages, and harm that Plaintiff has suffered and continues to suffer as of the filing of this Complaint. Plaintiff expects their damages caused by the Debt Collector to continue to accrue and be ongoing until Plaintiff is made whole again.

134.     The Debt Collector, as defined above, acted in a manner that was willful, intentional, reckless, and/or negligent in its actions related to Plaintiff. As a result of the Debt Collector's violations of the FDCPA, which are listed below, Plaintiff is entitled to actual, statutory, and punitive damages along with their attorneys' fees and costs in this matter.

135.     Plaintiff's damages attributable to the Debt Collector are described in detail in paragraphs 61-66 above.

136.     Plaintiff's damages attributable to the Debt Collectors are serious, continuing, and ongoing.

## COUNT VII:

### 15 U.S.C. § 1692e(2)(A)
### False Representation of the Character, Amount, or Legal Status of the Alleged Debt
### (Defendant Jefferson Capital)

137.     Plaintiff incorporates by reference the foregoing paragraphs as though the same were set forth at length herein.

138.     The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

139.     The FDCPA further provides that debt collectors may not falsely represent "the character, amount, or legal status of any debt…." 15 U.S.C. § 1692e(2)(A).

140.     The Debt Collector attempted to collect an alleged debt from Plaintiff regarding an account Plaintiff does not owe.

141.     Credit reporting is a debt collection activity.

142.     The Debt Collector reported to the CRAs that Plaintiff owed money on the following account:

a.     JEFFERSON CAPITAL                    Account #****7602

143.     The above listed account is the product of identity theft. The underlying account from which the Collection account originated was opened and placed on Plaintiff's credit reports as a result of identity theft. Plaintiff neither opened nor authorized the opening of the underlying account.

144.     Debt collectors must stand in the shoes of the original lender for whom they are attempting to collect a debt.

145.     Because Plaintiff did not open the underlying account on which the alleged debt was based, the Debt Collector violated the FDCPA by falsely representing that Plaintiff was owing.

146.     Collection accounts by nature are highly negative and derogatory, and as a result, Plaintiff has been damaged by the very presence of the collection account on their credit reports.

147.     Further, on information and belief, the Debt Collector was made aware of the fact that the account at issue in this litigation did not belong to Plaintiff. Plaintiff disputed the fraudulent and inaccurate account at issue in this litigation via dispute packages mailed directly to the CRA. Plaintiff's dispute packages contained a detailed and thorough dispute letter, a copy of Plaintiff's FTC identity theft report, a copy of Plaintiff's police report, and a copy of Plaintiff's driver's license for identification verification.

148.     On information and belief, notice of Plaintiff's disputes and attachments were transmitted to the Debt Collector by the CRAs during the dispute process. Therefore, the Debt

Collector was aware that the account did not belong to Plaintiff and continued debt collection activities while having knowledge that the account was the result of identity theft.

149.        By reporting the fraudulent and inaccurate account on Plaintiff's credit reports, and by verifying the account as accurate during Plaintiff's dispute process, the Debt Collectors falsely represented the character, amount, and legal status of the alleged debt. The Debt Collector violated 15 U.S.C. § 1692e(2)(A) by falsely representing that the fraudulent and inaccurate account belonged to Plaintiff.

150.        Had the Debt Collector acted in accordance with their duties under the FDCPA, the Debt Collector would never have reported and/or verified as accurate the fraudulent and inaccurate account disputed by Plaintiff.

## <u>COUNT VIII:</u>

### 15 U.S.C. § 1692e(8)
### Communicating Credit Information that is Known or Should be Known to be False
### (Defendant Jefferson Capital)

151.        Plaintiff incorporates by reference the foregoing paragraphs as though the same were set forth at length herein.

152.        The FDCPA provides that a debt collector who engages in "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," is acting in violation of the FDCPA. 15 U.S.C. § 1692e(8).

153.        Credit reporting is a debt collection activity.

154.        On information and belief, the Debt Collector knew that the account at issue in this litigation was the product of identity theft and that the account did not belong to Plaintiff. Even

30

with this knowledge, the Debt Collector continued to communicate inaccurate information about Plaintiff to the CRAs in violation of the FDCPA.

155.    On information and belief, the Debt Collector was made aware of the fact that the account at issue in this litigation did not belong to Plaintiff. Plaintiff disputed the fraudulent account at issue in this litigation via dispute packages mailed directly to the CRAs. Plaintiff's dispute package each contained a detailed and thorough dispute letter, a copy of Plaintiff's FTC identity theft report, a copy of Plaintiff's police report, and a copy of Plaintiff's driver's license for identification verification.

156.    On information and belief, notice of Plaintiff's dispute and attachments were transmitted to the Debt Collector by the CRAs during the dispute process.

157.    On information and belief, the Debt Collector verified the fraudulent and inaccurate account disputed by Plaintiff as accurate and instructed the CRAs to continue their reporting of the account at issue in this litigation, to Plaintiff's great detriment.

158.    Therefore, the Debt Collector was aware that the account did not belong to Plaintiff and continued debt collection activities while having knowledge that the account was the result of identity theft.

159.    The Debt Collector violated 15 U.S.C. § 1692e(8) by communicating fraudulent and inaccurate credit information to the CRAs about Plaintiff that the Debt Collector knew or should have known was false.

160.    Had the Debt Collector acted in accordance with its duties under the FDCPA, the Debt Collector would have ceased reporting the fraudulent and inaccurate account to the CRAs following Plaintiff's disputes.

## COUNT IX:

### 15 U.S.C. § 1692f
### Unfair or Unconscionable Means to Collect a Debt
### (Defendant Jefferson Capital)

161.    Plaintiff incorporates by reference the foregoing paragraphs as though the same were set forth at length herein.

162.    The FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA further provides that "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," 15 U.S.C. § 1692f(1), is a violation of the FDCPA.

163.    Credit reporting is a debt collection activity.

164.    On information and belief, the Debt Collector knew that the account at issue in this litigation was the product of identity theft and that the account did not belong to Plaintiff. Even with this knowledge, the Debt Collector continued to attempt to collect a debt related to the fraudulent and inaccurate account at issue in this litigation.

165.    On information and belief, Debt Collector was made aware of the fact that the account at issue in this litigation did not belong to Plaintiff. Plaintiff disputed the fraudulent account at issue in this litigation via dispute packages mailed directly to the CRAs. Plaintiff's dispute packages each contained a detailed and thorough dispute letter, a copy of Plaintiff's FTC identity theft report, a copy of Plaintiff's police report, and a copy of Plaintiff's driver's license for identification verification.

166.     On information and belief, notice of Plaintiff's dispute and attachments were transmitted to the Debt Collector by the CRAs during the dispute process.

167.     Therefore, the Debt Collector was aware that the account did not belong to Plaintiff and continued debt collection activities while having knowledge that the account was the result of identity theft.

168.     Plaintiff neither opened nor authorized the opening of the fraudulent and inaccurate account at issue in this litigation. Because Plaintiff had no part in the agreement creating the alleged debt, the Debt Collector could not legally engage in debt collection activities against Plaintiff related to the alleged debt. The Debt Collector violated 15 U.S.C. § 1692f(1) when they attempted to collect a debt not expressly authorized by the agreement creating the debt or permitted by law.

169.     Had the Debt Collector acted in accordance with its duties under the FDCPA, the Debt Collector would have never engaged in debt collection activities, including credit reporting, related to the alleged debt.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a trial by jury and a judgment in Plaintiff's favor against Defendants based on the following requested relief:

a.   Actual and compensatory damages pursuant to 15 U.S.C. § 1681;

b.   Statutory damages pursuant to 15 U.S.C. § 1681;

c.   Punitive damages pursuant to 15 U.S.C. § 1681;

d.   Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o,

e.   Actual damages pursuant to 15 U.S.C. § 1692k;

f.   Statutory damages pursuant to 15 U.S.C. § 1692k;

g.  Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k;

h.  Such other and further relief as may be necessary, just and proper.


Dated: July 1, 2025


**Respectfully submitted,**

**BRANDON TOWNSEND,**


/s/  John Cole Gayle, Jr.
John Cole Gayle, Jr., Esquire
Counsel for Plaintiff
VSB No. 18833
THE CONSUMER LAW GROUP, P.C.
1508 Willow Lawn Drive, Suite. 220
Richmond, VA  23230
804-282-7900 - Phone
804-673-0316 - Fax
jgayle@theconsumerlawgroup.com